ARMSTRONG v. KANSAS CITY LIFE INS. CO.

No. 1208.

District Court, N. D. Texas, Abilene Division.

Nov. 13, 1935.

Johnson, Moore & Stockdale, of Fort Worth, Tex., for plaintiff.

McBride, Hamilton, Lipscomb & Wood, of Dallas, Tex., for defendant.

WILSON, District Judge.

This is a suit by Lila Armstrong, a widow, on a life insurance policy issued by the defendant to her husband, Carl Q. Armstrong, on the 23d day of March, 1925. The amount sued for is $3,000, the face of the policy, with 6 per cent. interest from the 18th day of September, 1934, 12 per cent. as statutory damages, and a reasonable attorney's fee alleged to be $1,000. The annual premium on the policy was $57.78.

A general history of the matter is: From the time the policy was issued up to March 23, 1931, there were many defaults in the payment of the premiums, and as many reinstatements on applications, and showings of an insurable state of health, etc. The premium due March 23, 1931, was not paid, nor within the grace period, and the company, as a mere matter of indulgence, continued the policy in effect, while it negotiated with the insured with respect to payment, and some weeks thereafter accepted a note dated back to March 23, 1931, for the full amount of the premium, payable November 15, 1931.

The insured made default in the payment of the note also. The note, among other provisions, had the following: "But if this note is not paid by me when due, according to its terms, then this note shall immediately and automatically cease to be an obligation or claim against me." And further provided that the insured's rights, and the rights of his beneficiary, or any one claiming under the policy, and the rights and liabilities of the company thereunder, would be the same, if not paid, as if said note had not been given. At this juncture, the company, as it had a right to do under the policy and said provisions of the note, declared the policy canceled as of date, the 23d day of March, 1931, the due date of the premium. That was done under the second paragraph in the policy, under the heading "General Provisions and Privileges," as follows: "Upon failure to pay a premium on or before the date when due, this Policy will become null and void without any action or notice by the Company, and all rights shall be forfeited to the Company, except as hereinafter provided."

One of such exceptions, so provided for in this paragraph, was as to extended, nonparticipating term insurance, for such periods as the reserves to the credit of the policy might purchase. The policy had a cash surrender or loan value after the payment of three full premiums or more, and there was a table on the face of the policy giving the periods of any such extended insurance for any year from the third to the twentieth.

Under the heading "Table of Loan and Surrender Values" was the following: "This table will apply if this policy be free from indebtedness, but any existing indebtedness may be paid in cash, and the table will then apply; or if not so paid, the loan and cash values will be reduced by the indebtedness and the amount of paid-up or the term of extended insurance will be such as the reduced cash value will purchase. If default occurs after a fractional part of the current year's premium has been paid, the values will be proportionately adjusted."

Under the general heading "Non-Forfeiture and Loan Features" is the following:

"After payment of premium for three or more full years the following options shall become effective:

"1st. Extended Insurance—Automatic. If any premium on this policy shall not be paid when due, without action upon the part of the insured the Company will extend and continue in force, from such due date, the full amount of this policy as non-participating term insurance for the term of years and months as provided in the accompanying table."

It is not necessary to quote the other options, being immaterial, since they provide, only upon request of the insured however, one for paid-up insurance in such amount as the cash surrender value will purchase, and the other for the payment of such surrender value in cash. The record shows no request was made by the insured.

On March 23, 1931, at time default in payment of premium occurred, such cash surrender value of the policy was $175.23. There was, however, a loan against the policy of $132.43; this left only $42.80 to buy such extended insurance, which, according to the table, would carry the amount of the policy as term, nonparticipating insurance, for a period of 1 year and 213 days, or to October 22, 1932. The company during this pe-

riod notified the insured several times that the amount of the policy was being carried as such extended insurance, and that same would expire on the 22d day of October, 1932.

Under the heading "Protection in Event of Total Disability" is the following: "Section A. After one full annual premium has been paid and before default in the payment of any subsequent premium, if the insured shall furnish satisfactory proof of total permanent disability caused by bodily injuries or disease and will be continuously and wholly prevented thereby, for life, from pursuing any and all gainful occupations, and if such proof of disability is received by the Company prior to the insured having attained the age of sixty years, the Company by an indorsement in writing upon this policy, will agree to pay for the insured the premiums, if any, which shall thereafter become payable during the continuance of such total disability."

During the running of such period of 1 year and 213 days, no premiums were paid, nor applications for reinstatement presented, nor were proofs of any such permanent and total disability furnished by the insured. Nor were any premiums paid, nor any such proofs of permanent and total disability furnished subsequent to the expiration of said period of term insurance, and up to the date of the death of the insured, the 18th day of September, 1934.

The plaintiff filed this suit on the 3d day of October, 1935. The basis of her suit is set forth in paragraph 2 of the petition. After quoting above section A, under heading "Protection in Event of Total Disability" she pleads: "Plaintiff alleges that at a time when said policy was in full force and effect, and before said Carl Q. Armstrong had reached the age of sixty years, the said Carl Q. Armstrong became totally and permanently disabled from bodily disease, to-wit, from tuberculosis; that the said Carl Q. Armstrong contracted and developed said tuberculosis on or about the 15th day of July, 1931, and on or before July 15, 1932, the said Carl Q. Armstrong had become totally and permanently disabled as a result of said tuberculosis, and thereafter, on the 18th day of September, 1934 the said Carl Q. Armstrong died without in any manner recovering from the effects of said disease."

In the third paragraph, plaintiff undertakes to excuse the failure of furnishing satisfactory proof of such total and permanent disability on the ground that the policy was at all times in the possession of the company, and for that reason she did not know of said section A of the policy, and alleges that she offered to furnish such proofs within a reasonable time thereafter. The plaintiff relies for recovery on said quoted section A of the policy, and the defendant likewise relies on said section to defeat any recovery. It is my view that that section, in the light of the Bergholm Case, 284 U. S. 489, 52 S. Ct. 230, 231, 76 L. Ed. 416, completely bars any recovery by the plaintiff.

There is no controversy as to the facts affecting the construction to be given to this section of the policy, and the construction and law question here is directly dealt with by the Supreme Court in the Bergholm Case. The provisions construed are identical in substance. It will be noted from plaintiff's pleadings she does not allege that the total and permanent disability of Carl Q. Armstrong occurred prior to the default in the payment of the premium, due March 23, 1931. She does not even allege that he had tuberculosis prior to that date, that being the disease that caused his disability; on the other hand, that he did not have it until about the 15th day of July, 1931. Still more fatal, the total and permanent disability of her husband is not alleged to have occurred until on or before July 15, 1932. In addition to this, the evidence, weighed in a most favorable light for plaintiff, does not show any such disability of the insured did occur prior to July 15, 1932. Any disability occurring after lapse of the policy and prior to the expiration of the term insurance, on the 22d day of October, 1932, does not entitle plaintiff to recover. As of date, the 23d day of March, 1931, first for a failure to pay the premium, and second the note, the policy, as a life insurance policy, became void. It was merely the face amount of the policy that was extended as term insurance. The disability provision of the policy was not an accompanying provision of the extended term insurance. There was no sick and accident provision requiring the company to pay for total and permanent disability. It was

not, in a strict sense, insurance against disability in any degree. The company agreed to pay nothing for disability except, conditionally, the premiums. Disability only had the effect, first, to relieve the insured from paying the premiums, upon satisfactory proof of same first being shown, and, second, to place that responsibility of paying them on the company. The reason the occurrence of total disability of the insured during the period of extended term insurance, the 1 year and 213 days, could not be availed of at all by plaintiff, is that no premiums came due in that period and none were ever to come due. The matter of premiums was entirely at an end. This extended insurance was completely paid for by the balance of the cash value of the policy, after deducting the indebtedness. As heretofore indicated, the plaintiff neither alleges, nor proves, nor undertakes to prove, total and permanent disability, occurring even prior to the due date of the premium extension note, which was November 15, 1931. For the insured or the beneficiary to have invoked the total and permanent disability provision, such satisfactory proofs of disability had to be submitted prior to the 23d day of March, 1931, the due date of the premium, or at least prior to the due date of the premium note. If the plaintiff had established total and permanent disability occurring prior to the due date of said premium note, quite a different and much more interesting question would have been presented. It could, at least, be plausibly argued that the original premium due date had been postponed to the due date of the note. Really, under the undisputed facts in this case, the defendant does not need the Bergholm Case to defeat plaintiff's suit. Counsel for plaintiff seem to have the idea under said section A that such satisfactory proofs of total and permanent disability would be in time if presented before the insured would have attained the age of sixty years. Of course, that theory cannot be accepted. It must not be overlooked that such satisfactory proofs must be presented before default in the payment of a premium also. Through that provision, this feature of total and permanent disability, for a very evident reason, passed out of the policy, for all purposes, when insured attained the age of sixty and means, regardless of the occurrence of such disability prior to that

age, it could not be availed of by submitting the requisite proof of it subsequent to reaching that age.

But in any event, the plaintiff cannot recover under the holding of the Bergholm Case. In that case, in the policy construed, the provision with respect to furnishing such proof of disability was as follows: "Upon receipt by the Company of satisfactory proof that the Insured is totally and permanently disabled as hereinafter defined the Company will 1. Pay for the Insured all premiums becoming due hereon after the receipt of such proof and during the continuance of the total and permanent disability of the Insured." Construing that, Justice Sutherland said: "Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof.*"

The corresponding provision in the policy we have here is: "After one full annual premium has been paid and before default in the payment of any subsequent premium, if the insured shall furnish satisfactory proof of total permanent disability * * * and if such proof of disability is received by the Company prior to the insured having attained the age of sixty years, the Company by an indorsement in writing upon this policy, will agree to pay for the insured the premiums, if any, which shall thereafter become payable during the continuance of such total disability."

It needs no elaboration to demonstrate that the two provisions, with respect to the furnishing of proof of disability, are, in their essence, identical. Here it was, likewise, on furnishing the satisfactory proof of such disability that the company would indorse on the back of the policy its agreement to pay the premiums, etc. Obviously it must be held, in this case, the furnishing of such proof was a condition precedent to any right of the insured or the beneficiary to impose the obligation of paying premiums on the company. Even the rule adopted in the Marshall Case (C. C. A.) 29 F.(2d) 977, would not save the plaintiff here, unless it should be held that furnishing such proof any time before the insured would have attained the age of

sixty years would be sufficient. The proof in this case was never furnished, and under any theory the plaintiff did not even offer to furnish such proof within what would be considered a reasonable time. The excuse that the policy was in possession of the company, if it excused the plaintiff, certainly could not excuse the insured's failure to furnish the proofs, and he lived over three years after the policy lapsed.

This view I have taken, on the law question presented, makes it unnecessary to discuss the challenged sufficiency of the evidence to show that total and permanent disability occurred prior to the expiration of the term insurance. For the reasons stated, the matter having been submitted to the court, judgment will be for the defendant.