**FIRST NATIONAL BANK OF MIDLAND, Trustee, et al., Plaintiffs-Appellants,**

v.

**PROTECTIVE LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 74–1944.**

United States Court of Appeals, Fifth Circuit.

April 21, 1975.

732

Stanley P. Wilson, Michael S. Baskerville, Abilene, Tex., Guilford L. Jones, Big Spring, Tex., for plaintiffs-appellants.

Harrell Feldt, W. B. Browder, Jr., Midland, Tex., for defendant-appellee.

1. Grace Period—A grace period of thirty-one days will be allowed for the payment of each premium after the first, during which period this. policy will continue in force. If the death of the Insured occurs within the grace period, any premium then due and unpaid shall be deducted from the amount otherwise payable hereunder. If any premium shall not be paid when due or within the grace period this policy shall terminate except as provided in the Non-Forfeiture Provisions.

2. Reinstatement—If this policy has terminated for non-payment of premiums, and has not been surrendered for cash, it may be reinstated at any time upon furnishing evidence of insurability satisfactory to the Company, payment of all past due premiums with interest at 6% compounded annually from the due date of each such premium to the date of reinstatement, and the payment or reinstatement of any indebtedness on this policy with

Before DYER, MORGAN and GEE, Circuit Judges.

DYER, Circuit Judge:

This appeal involves the construction of a life insurance policy to determine whether the policy's conversion option may be elected, subsequent to the lapse of the policy, while coverage continues as extended term insurance under the automatic non-forfeiture provision of the policy. The district court ruled that it could not. We agree and affirm.

Robinson, the deceased, purchased a $100,000 life insurance policy in May, 1965, and subsequently transferred title in trust to plaintiff First National Bank of Midland, Texas, retaining the obligation to pay premiums. He failed to pay the 1971 premium when due or within the 31-day grace period and the policy lapsed.[1] Robinson had become afflicted with Parkinson's disease, was uninsurable, and his application for reinstatement was denied.[2] Upon lapse, the coverage continued under the automatic operation of the extended term insurance non-forfeiture provision of the policy.[3] The Bank attempted to exercise the policy's conversion option, asserting the election to be appropriate during the extended coverage.[4] Upon refusal by defendant

compound interest thereon at the rate set forth in the Loan Interest Provision.

3. Automatic Option—If on the expiration of the grace period allowable for any premium in default the Automatic Premium Loan Provision is not then effective and no Non-Forfeiture Option has been elected, Option 3 shall apply automatically unless the Policy Specifications on Page Three show that this policy is in a Special Premium Class, in which case Option 2 shall apply automatically, subject in either case to the Owner's right to elect another available Non-Forfeiture Option within 60 days after the due date of such premium.

4.     CONVERSION OPTIONS

Upon surrender of this policy, while it is in force, at any time within the Conversion Period set forth in the Policy Specifications on Page Three, which Conversion Period

Protective Life to permit the conversion, the Bank elected to receive paid-up insurance in the reduced amount of $10,100 under the non-forfeiture provision of Option 2.[5] Robinson subsequently died, and the trustee brought this suit to collect the $100,000 face amount of the policy rather than the $10,100 paid-up insurance on the theory that the insurance company breached its contract by refusing to allow the Bank to exercise a conversion option.

We recognize the general rule that policies of insurance are to be interpreted liberally in favor of the insured and strictly against the insurer, Providence Washington Ins. Co. v. Proffitt, 1951, 150 Tex. 207, 239 S.W.2d 379, and that the construction urged by the insured "has to be no more than one which is not itself unreasonable." Continental Casualty Co. v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762, 763; nevertheless, "there should be a fair and reasonable construction of the language of a policy, rather than a strained, unnatural or technical interpretation . . . ." State Farm Mutual Automobile Ins. Co. v. Walker, Tex.Civ.App.1960, 334 S.W.2d 458, 462. We find that construction urged by the Bank, that under the extended term insurance the exercise of the conversion option remained viable, to be strained and unreasonable.

The conversion option provides that it may be elected "while it [the policy] is in force." The grace period provision of the policy continues the policy "in force" for a 31-day period past the due date of an unpaid premium and states that "[i]f any premiums shall not be paid when due or within the grace period this policy shall terminate except as provided in the Non-Forfeiture Provisions." Consequently, the policy lapses upon expiration of the grace period without payment of the premium due, and new life can be breathed into the policy only to the extent provided in the non-forfeiture provisions. See e. g., Great Southern Life Ins. Co. v. Peddy, 1942, 139 Tex. 245, 162 S.W.2d 652 (double indemnity provision terminates when coverage continues under extended insurance non-forfeiture provision), and Armstrong v. Kansas City Life Ins. Co., N.D.Tex.1935, 12 F.Supp. 817 (waiver of premium provision not included under extended insurance). Cf. Bergholm v. Peoria Life Ins. Co., 1932, 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416.

The reason for the non-forfeiture provision is quite apparent. It gives the insured those values which should not and cannot be forfeited with justice. In this case the policy had accumulated a cash value of $1,700 which rightfully belonged to the Bank. This cash value

begins on the Date of Issue, this policy may be exchanged for a new non-participating policy issued on the same risk classification as this policy for a Face Amount not greater than the Face Amount of this policy. The exchange may be made under either one of the two following options:

First Option—Conversion as of Original Date—The new policy will be dated as of the Date of Issue of this policy, with the premium based on the age of the Insured at the Date of Issue of this policy and the Company's premium rates then in use. The new policy may be issued on any form of non-participating life or endowment policy issued by the Company on the Date of Issue of this policy providing a level Face Amount of insurance with level premiums. The difference between the premiums paid under this policy and the premiums which would have been paid under the new policy, with compound interest at the rate of 6 per cent per annum, shall be paid to the Company at the time of exchange.

Second Option—Conversion as of Attained Age—The new policy will be dated as of the date of the exchange, with the premium based on the age of the Insured at the date of exchange and the Company's premium rates then in use. The new policy may be issued on any form of non-participating life or endowment policy then issued by the Company providing a level Face Amount of insurance with level premiums. The first premium under the new policy shall be paid to the Company at the time of exchange. The net cash value, if any, of this policy on the date of conversion will be applied toward payment of the first premium under the new policy, and any excess of such net cash value over such premiums will be paid to the Owner in cash.

The new policy will be issued without further evidence of insurability.

**5.** See note 6 infra.

inures to the benefit of the owner of the policy and not to the company and permits the owner to either 1) receive the net cash value; 2) receive paid up insurance in the amount that the net cash value will purchase or 3) obtain extended term insurance for such period as the net cash value will purchase. Importantly, each option in the non-forfeiture provision is premised upon the use by the owner of the then net cash value of the policy.[6]

On the other hand the conversion options may be exercised only *while the policy is in force*. The literal terms of the policy thus leave no life in the conversion options after lapse. The non-forfeiture provision cannot be said to resurrect the entire policy. On the contrary, it continues only the face value of the life insurance as extended term insurance. Were we to uphold the construction of the policy urged by the Bank, it would be tantamount to saying that the parties intended that upon termination of the policy for failure to timely pay a premium, the defaulting party loses no rights. It would follow that an insured, denied reinstatement because of uninsurability, would nevertheless be entitled to reinstatement through the exercise of the conversion option. The reinstatement provision would be rendered virtually meaningless. We must avoid a construction that does not give all portions of the policy meaning and effect. Jame-

son v. Mutual Life Ins. Co., 5 Cir. 1969, 415 F.2d 1017, 1020.

The Bank refers to two provisions in the policy, which by their terms are excluded under the extended term insurance, to argue that the absence of an express exception in the "Conversion Options" provision keeps it operative under the non-forfeiture provision. It first points to the "Loans" provision, under which the company will loan up to the cash value "[w]hile this policy is in force, except as extended term insurance." The Bank argues that had the Company desired to limit the conversion options it should have incorporated the "except as extended term insurance" language there as it did under the "Loans" provision. But this is a semantical extrapolation that can be made only by overlooking the reason that the exceptive language was included in the Loans provision. A policy of "paid-up insurance" acquired under paragraph 2 of the non-forfeiture provisions may have a loan value, but "extended term insurance" acquired under paragraph 3 "will continue for such period as the net cash value will purchase at the net single premium rate at the then attained age of the insured" and as *term* insurance has no loan value. It was to avoid confusion with respect to the types of coverage upon which loans were available that the exceptive language was used in the Loans provision and obviously there was no reason to utilize the exceptive language in the con-

### 6.    NON–FORFEITURE PROVISIONS

After premiums have been paid under this policy to the date when a cash value first becomes available, if any subsequent premium is not paid when due, the Owner may elect one of the following options upon a written notice to the Company at its Home Office within 60 days after the due date of such premium:

1.  Cash Value—To surrender this policy and receive its net cash value. The net cash value on any premium due date is the cash value on such date, computed as described under "Basis of Values", less any indebtedness on this policy. The cash values at the ends of certain policy years are shown in the Table of Non-Forfeiture Values.

2.  Paid-up Insurance—To have the policy continued as non-participating paid up insurance for a reduced amount payable at the same time and under the same conditions as the Face Amount of this policy. The amount of paid up insurance is the amount which the net cash value will purchase at the net single premium rate at the then attained age of the Insured.

3.  Extended Term Insurance—(Available unless the Policy Specifications on Page Three show that this policy is in a Special Premium Class.) To continue insurance hereunder as non-participating extended term insurance for the Face Amount of this policy less any indebtedness on this policy. The extended term insurance will continue for such period as the net cash value will purchase at the net single premium rate at the then attained age of the Insured.

version options. The Bank next points to the language excluding additional benefits provided by any riders in the extended term insurance provision. It argues that a similar exclusion does not appear in the conversion options. Rather than reflecting an intention to keep the entire policy in force under the non-forfeiture provision, the rider exclusion was clearly inserted to prevent an insured from arguing that a particular rider (*e. g.* double indemnity coverage) is so tied in with the extended term insurance as to constitute a part thereof. It would be a strained and unreasonable construction indeed, particularly in light of the exceptionally clear language of the non-forfeiture provision, to read these two policy provisions to mandate the availability of the conversion option under the extended term insurance.

■ The policy lapsed for failure of the insured to pay the premiums on or before the due date or within the grace period. Reinstatement was properly refused because the insured did not and could not furnish evidence of insurability satisfactory to the company. The non-forfeiture provisions in unambiguous terms spelled out what and only what disposition was to be made of any cash values which remained to the credit of the insured after the policy lapsed. Obviously the entire policy was not to continue in effect under these provisions. It would be a perversion of the clear meaning and intent of the non-forfeiture clause to suggest that it may be read to permit the insured to elect a conversion option. Since the company had $1,700 (cash value) which it was not entitled to retain, the company agreed, under the non-forfeiture provisions, to give three options to the Bank, *i. e.* 1) to return the $1,700; 2) to use the $1,700 to continue the policy in the reduced amount of $10,-100 as paid-up insurance; or 3) to use the $1,700 for extended term insurance for one year and 167 days. The Bank elected to receive paid-up insurance un-

der option 2 and a rider to the policy carrying this into effect was issued to the Bank. This then constituted the contract between the parties and gave the Bank all that it was entitled to get.[7]

Affirmed.

---

7. Since there existed no right to elect the conversion option it is unnecessary to reach the question whether the bank waived any breach of the contract by accepting the $10,-100 of paid-up insurance.