**Charles F. GRAY, Plaintiff-Appellant,**

v.

**MARTINDALE LUMBER COMPANY, Jack Martindale and Wilmer Martindale, Defendants-Appellees,**

**Northwestern National Insurance Company, Intervenor.**

**No. 74–1016.**

United States Court of Appeals, Fifth Circuit.

March 5, 1976.

---

Harold Peterson, Beaumont, Tex., George L. Schmidt, Houston, Tex., for plaintiff-appellant.

John H. Seale, March H. Coffield, Jasper, Tex., for defendants-appellees.

Rufus S. Garrett, Jr., Ft. Worth, Tex., amicus curiae on petition for rehearing en banc, for Tex. Assoc. of Defense Counsel.

ON PETITION FOR REHEARING

(Opinion 7–18–75, 5 Cir., 515 F.2d 1218, 1975)

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

RIVES, Circuit Judge:

A few corrections and changes are made in our opinion on original hearing which is now reported in 515 F.2d at 1218.

(1) We limit the following factual statements made at page 1221:

"Here, Martindale was in a better position than was Sears to warn Gray of the danger posed by unbanded lumber. Indeed, Martindale's employees would be the only persons, other than Gray, who would know for sure that the lumber was unbanded."

The parties do not take us to task for those statements, and we adhere to them as limited to the time of the loading of the truck in the late afternoon of July 18, 1969 (App. 130). However, Gray then drove the truck to Sears' terminal in Jasper, Texas, where it remained until midnight when the journey to the oil field in Louisiana began. During that interval, Ezell, Gray's immediate supervisor and kinsman by marriage, saw the truck and observed that the bundles were not banded (App. 578). Ezell knew from experience that you could expect oil field road lumber to fall from the truck if the bundles were not banded (App. 581) and that a driver not familiar with that type of hauling should be cautioned about the danger (App. 577, 580). Ezell did not warn Gray because he assumed that Gray had had sufficient experience with that type of hauling, a mistaken assumption according to Gray's testimony.

■ (2) We have reached the conclusion that the *Delhi-Taylor* doctrine is one of substantive tort law instead of being intended to distribute trial functions between judge and jury, and hence that the portion of part III of our original opinion relating to the *Erie-Tompkins* doctrine is not applicable and is therefore withdrawn.

■ (3) We recognize that as originally applied to landowner-occupier negligence cases the *Delhi-Taylor* doctrine is not "harsh," and that we were mistaken in so characterizing it in the text accom-

panying footnote 7 of our original opinion at 515 F.2d 1221. The cases cited in that footnote had reference to the doctrine of assumption of risk. That doctrine does not apply to an employee of an independent contractor. However, such an employee is bound by the doctrine of volenti non fit injuria. The trend of the Texas Supreme Court to restrict the application of the doctrine of assumption of risk has continued to the ultimate abolishment of the defense of that doctrine in ordinary negligence cases, however *prospectively* from July 9, 1975, much later than the date of Gray's injury. *Farley v. M. M. Cattle Company*, Tex., 529 S.W.2d 751.

(4) Gray's reliance was not on the failure of Martindale[1] to warn him of the danger or risk of the unbanded lumber after it had become a danger, hidden from Gray, on the land at the point of unloading. Instead, the situs of the alleged negligence of the defendants was at their mill in Jasper, Texas, some 140 miles distant from the oil field in Louisiana where Gray was injured.

The primary and dominant negligence charged against Martindale was not a failure to warn but a failure to place bands around the bundles of timber before loading them on Gray's truck, thereby avoiding the necessity of any warning. The jury could have reasonably believed that Martindale then delivered the extremely dangerous unbanded bundles of timber, giving no warning at that time of the risk or danger. Such risk or danger would have existed to some extent throughout the ensuing 140 mile trip to the oil field site, though the likelihood of the boards falling became greater at the site of unloading. Gray's amended complaint charged that Martindale's negligence

". . . consisted of each or all of the following acts of omission and commission:

1) In failing to board or place bands around the timber loaded on the semi-trailer in question;

2) In failing to instruct the Defendants' employees to band such timber before loading same on said semi-trailer;

3) In failing to warn the Plaintiff that said oil field timber was not banded and would fall when unchained;

4) In failing to stake the load to prevent the timbers from falling from said trailer;

5) In loading oil field timber on the trailer without banding the load;

6) In loading oil field timber on the trailer without staking the load.

"That each and all of the foregoing acts and omissions constituted negligence and each and all were a proximate cause of the Plaintiff's injuries and damages." (Vol. I, App. 31, 32.)

Thus, the situs of each of these allegedly negligent acts of omission or commission was at Martindale's mill in Jasper, Texas.[2]

Similarly, the pretrial order in this case stated:

"The Plaintiff asserts that the injury was proximately caused and occurred by reason of the negligence of the Defendants, Martindale Lumber Company, Wilmer Martindale, Jack Martindale and their employees in failing to band the board road lumber that was loaded on the truck in question." (Vol. I, App. 49.)

Gray and Martindale each participated in the loading of the truck, but their respective acts were separate. Gray directed the position on the truck at which Martindale's forklift would place each of the ten bundles of lumber. Martindale attended to the banding of the bundles. There was a mass of testimony from one

---

1. In this opinion we usually refer to the defendants collectively as "Martindale."

2. ". . . questions of causation are usually for a jury under the Seventh Amendment." *Anderson v. Nosser*, 5 Cir. 1972 (*en banc*) 456 F.2d 835, 841, *cert. denied* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89. *See also Arkwright Mutual Ins. Co. v. Philadelphia Electric Co.*, 3 Cir. 1970, 427 F.2d 1273, 1275.

of the defendants, Wilmer Martindale (App. 409), and from Martindale's employees, Harvey and Primrose (App. 331, 345, 364, 368), that at the time of Gray's injury and for several years before that time Martindale customarily banded board road lumber.

The *Delhi-Taylor* doctrine would not become operative at the time and place of Martindale's alleged negligence as charged and relied on by Gray. That doctrine might be available to the defendants in attempting to prove a breach in causal connection at the place of unloading, a question for the jury's determination. See n. 2, *supra*. The charge quoted in our original opinion (515 F.2d 1219) lets the tail wag the dog. It precludes any recovery if Gray's employer or supervisor or foreman knew of the danger and appreciated its nature and extent. It seems an obvious non sequitur to say that because of knowledge on the part of his employer or foreman or supervisor, Gray himself knew of the danger, appreciated its nature and extent, and voluntarily exposed himself to that danger.

(5) We recognize that one of the cases cited in our original opinion, *Keeth v. Phillips Petroleum Co.*, Tex.Civ.App.1972, 482 S.W.2d 291, involved circumstances remarkably similar to those in the present case. Keeth was the employee of an independent contractor engaged in making an addition to Phillips' plant in Dumas, Texas. Pipe for the job was loaded elsewhere on a Phillips truck by a Phillips employee. Keeth was injured when the pipe "swarmed" as he was attempting to unload it at the construction site. He sued Phillips for negligent loading of the pipe. The Texas court held that because Keeth's foreman saw and appreciated the danger presented by the improperly loaded pipe, Phillips' duty as a landowner to warn of such hidden danger was discharged. It cited *Delhi-Taylor* as authority for this result. The Texas Supreme Court refused the writ of error *n. r. e.*, meaning it approved the

result but not necessarily the reasoning of the intermediate court. We question the *Keeth* application of the *Delhi-Taylor* doctrine to negligence in performance of the job merely because the injury was sustained on Phillips' property, but we do not sit to overrule Texas appellate courts. We do refuse to extend *Delhi-Taylor* to the present situation where the injury did not occur on Martindale's property and where the injury was allegedly caused by Martindale's negligent action, some 140 miles from the place of injury, and not from any failure to warn of dangerous conditions at the remote premises where the injury occurred.

Texas courts distinguish between dangers resulting from the performance of work on the premises and dangers arising from inherently unsafe conditions on the premises. *Moore v. Texas Co.*, Tex.Civ.App.1956, 299 S.W.2d 401, 403. The duty of an owner-occupier to warn invitees runs only to dangerous conditions on his premises, not to transitory dangers which might arise during the performance of work. *Gulf Oil Corp. v. Bivins*, 5 Cir. 1960, 276 F.2d 753. Any negligence of Martindale, in failing to band the board road lumber when loading the lumber or in failing at the time of loading to advise Gray of the danger created by the unbanded lumber, must arise from a breach of Martindale's duty to conduct its business in a manner not harmful to others; it does not arise from a breach of Martindale's duty as an owner-occupier to warn of dangerous conditions.

Texas courts fashioned the *Delhi-Taylor* doctrine to prevent an owner-occupier's duty to independent contractors and their employees from becoming too onerous. *Keeth* clouded the issue by applying the doctrine to a negligent act rather than a dangerous condition on the owner's premises. Another Texas Court of Civil Appeals has expressed doubt that *Delhi-Taylor* applies except to the duty owed by an owner-occupier to an invitee.[3] This Court, applying Texas

3. *Rourke v. Garza*, Tex.Civ.App.1974, 511 S.W.2d 331, 339.

law, has applied the doctrine to the duty owed by one lessee to a co-occupier of leased land.[4] The highest court of the State has not resolved the issue.[5] Without a clear mandate from Texas courts, we decline to apply *Delhi-Taylor* to a negligence case not based on an owner-occupier's duty to warn of inherently dangerous conditions on his property. None of the policy reasons behind the doctrine would be served by its application to this case.

In another case cited in our original opinion, *McWilliams v. Snap-Pak Corporation*, Tex.Civ.App.1972, 476 S.W.2d 941, McWilliams was a truck driver employed by Robertson Truck Lines (Robertson). Robertson was a large transportation company hauling all types of cargo, including petroleum products. McWilliams sued Snap-Pak Corporation for personal injuries received when he was unloading some petroleum product into Snap-Pak's storage tank. A fire occurred resulting in burns to McWilliams. The negligence charged was a failure of Snap-Pak to furnish safe unloading equipment and its failure to warn McWilliams that the substance was highly volatile. At the conclusion of the evidence for McWilliams, the plaintiff, the Texas trial court withdrew the case from the jury and rendered judgment for Snap-Pak, the defendant. On appeal the judgment was reversed and the case remanded on a holding that neither McWilliams nor his employer, Robertson, had sufficient knowledge of the danger. The Texas Court of Civil Appeals commented that, "If the accident had occurred when such full knowledge of the danger was possessed by Robertson, *Delhi-Taylor* and other cases cited by appellee would control, and appellee would have no duty to warn. Robertson's knowledge would be imputed to McWilliams." 476 S.W.2d at ·947. That case was more clearly an

owner-occupier case than is the present case. We decline to extend the quoted sentence from the opinion in that case to the negligence charged against Martindale in the present case.

None of the *Delhi-Taylor* reasons for imputing an employer's knowledge of a dangerous situation to his employee exists here, and it was error to impute this knowledge to Gray as a matter of law in the "assumption of risk" charge to the jury.

We adhere to our original decision, and the petition for rehearing is denied.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

4. *Miles v. Shell Oil Co.*, 5 Cir. 1974, 498 F.2d 105.

5. In affirming *Rourke v. Garza, supra*, on November 5, 1965, the Texas Supreme Court declined to apply *Delhi-Taylor* on the ground that the case involved strict liability, not general negligence; it did not respond to the intermediate court's opinion that *Delhi-Taylor* should apply only to owner-occupier negligence cases. *Rourke v. Garza*, Tex.1975, 530 S.W.2d 794.