**MARTINDALE LUMBER COMPANY et al., Plaintiff-Appellee,**

v.

**BITUMINOUS CASUALTY CORPORATION, Defendant-Appellant.**

No. 79–1343.

United States Court of Appeals, Fifth Circuit.

Sept. 10, 1980.

Dewey J. Gonsoulin, Beaumont, Tex., for defendant-appellant.

March H. Coffield, Jasper, Tex., for plaintiff-appellee.

Before GOLDBERG, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

This suit is by a policyholder (Martindale) against its insurer (Bituminous). The district court held Bituminous liable for certain amounts due Martindale because of the insurer's refusal to defend and pay a tort claim made against Martindale by a person injured in an accident within the coverage of the Bituminous comprehensive general liability policy issued to Martin-

dale.[1] The defendant appeals, contending that the injury and the off-premise accident fell within a Completed Operations or a Products hazard, as defined by the insurance contract, and by it expressly included from coverage. We affirm the district court's rejection of this non-coverage defense and its conclusion that the accident was covered by the Premises-Operations and its Independent Contractors hazards insured by the policy.[2]

## I.

The present suit by Martindale against Bituminous, its insurer, arises out of an earlier suit against Martindale. In that action, Gray sued Martindale in tort for personal injuries. Martindale and Gray subsequently entered into a compromise settlement.[3] In the present suit against Bituminous for its failure to defend and pay the Gray claim against its insured covered by its policy, the district court allowed Martindale recovery of the amount of the settlement (up to policy limits) and of Martindale's attorney's fees and other expenditures necessitated by the failure of the insurer to defend the suit brought by Gray against the policyholder.[4]

The basis of Gray's suit against Martindale was its alleged failure to band the lumber loaded at its Texas plant by its employees onto a truck operated by Gray. As a consequence of this failure, the unsafely secured lumber fell upon and severely injured Gray when he unchained the upper stacks at his truck's arrival at the Louisiana premises of the eventual purchaser. Gray was a truckdriver employed by an independent contractor (Sears) retained and paid by Martindale to deliver the lumber to the destination designated by the purchaser.

■ Relying upon the transfer of physical possession of the lumber to Gray and his employer Sears, Bituminous contends that the accident and the resulting injuries fell within either or both the Completed Opera-

---

1. The plaintiffs in this action are F. W. Martindale, Jack Martindale, and Martindale Lumber Company. For simplicity of expression, the plaintiffs will be referred to in the singular simply as Martindale. According to the Agreed Statement of Facts, Jack and F. W. (Wilmer) Martindale are equal partners in the Martindale Lumber Company. The Bituminous policy was issued to F. W. Martindale DBA Martindale Lumber Company, and the named insured was declared to be an individual. The insurer contended that it is not liable to *Jack* Martindale. The district court in its Conclusions of Law determined that the Bituminous policy covered all three plaintiffs; it likewise found a duty to defend all three on the part of the insurer. We find no error in this construction of the intent of the parties to the contract. The court was required to eliminate any apparent contradiction in the manner in which the insured was named and the classification in which he/it/they were placed in the declarations. Its conclusion is not unreasonable as effectuating the protection the contract as a whole appears designed to provide. Moreover, it is not seriously contended that the existence or amount of liability on the part of Bituminous would be affected, even were this argument more convincing. All three plaintiffs were jointly and severally liable to Gray, and the policy coverage and duty to defend would be owed in full, even if to only one or two of the plaintiffs.

2. The defendant additionally contends, and the plaintiff concedes, that the award of prejudgment interest should be reduced from 9% to 6% per annum. Accordingly, we will remand for modification of the interest to 6% on the prejudgment portion of the award.

3. The initial trial of Gray's suit against Martindale resulted in a reversal, reported at *Gray v. Martindale Lumber Co.*, 515 F.2d 1218 (5th Cir. 1975), modified on rehearing, 527 F.2d 1352 (5th Cir. 1976). The settlement between Martindale and Gray was entered into subsequent to a remand for new trial.

4. The parties to the present action stipulated that the settlement was fair and reasonable, considering the issues of liability and the extent of the damages. They also agree that the amounts awarded were reasonable and necessary, including the attorney's fees incurred by Martindale in defense and settlement of Gray's suit.

tions [5] hazard or the Products [6] hazard, both of which are expressly excluded from policy coverage. The substance of its contention is that Martindale's operations were "completed" (see footnote 5) and that the product was relinquished to "others" (see footnote 6) when Martindale delivered the lumber to Sears, the trucking contractor (who according to Bituminous' argument) was delivering the lumber for the purchaser rather than for Martindale. For reasons more fully stated below, we agree with the district court that these excluded hazards are not applicable, because: (1) Martindale's oral contract with the buyer included its contractual responsibility to deliver the lumber through an independent contractor employed and paid by it; and (2) the accident occurred while the lumber was still in the possession of the independent contractor who was engaged in performing Martindale's contract and prior to the lumber's delivery to the eventual buyer.[7]

## II.

The present suit was tried upon stipulated facts. Relevant to the present issued, these show: Martindale sold the lumber to Elkins, a broker in Lake Charles, La. Martindale contracted with Sears, a trucking company, to deliver the lumber to the destination designated by Elkins. Sears billed its delivery charges to Martindale, who paid them; Martindale billed Elkins for the price of the lumber at its mill and the exact freight charges billed to it by Sears, making no profit for the delivery itself (although making a profit on the lumber).

We find no error in the district court's characterization of these facts as showing that the contract between Martindale, as seller, and Elkins, as buyer (broker), included Martindale's contractual obligation to deliver and pay for delivery of the lumber sold. Thus, Martindale's lumberyard operations included, in connection with the present transaction, the delivery of the lumber to the eventual purchaser. Although Elkins designated the destination of the lumber, after Martindale had employed Sears as trucking contractor to deliver, nevertheless, under the contractual agreements, Sears in accomplishing delivery was primarily operations for Martindale, not for Elkins.[8]

5. Relevantly, the policy provides that this hazard includes injury away from the insured's premises, which occurs "after [the insured's] operations have been completed," and it further states that operations shall be deemed completed "(1) when all operations to be performed by or on behalf of the insured shall be completed, . . . or (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization *other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project*." The issue here is essentially whether the insured's "operations" (and those performed on its behalf) included delivery of the lumber by the independent contractor to the *eventual purchase, or whether instead its "operations" were completed by delivery of the lumber to the independent contractor.

6. Relevantly, the policy provides that this hazard includes injury arising from the insured's products that occurs away from the insured's premises if "physical possession of such products has been relinquished to *others*." The issue here is whether an independent contractor retained and paid by the insured is an "other" to whom the insured relinquishes possession, even when the insured does so for the purpose of the contractor's performance of the insured's operation and contract.

7. Because of this conclusion, we do not find the non-coverage rulings in the decisions relied upon by Bituminous to be applicable to the present facts. *Pan American Insurance Company v. Cooper Butane Co.*, 157 Tex. 102, 300 S.W.2d 651 (1957); *Maryland Casualty Company v. Knorpp*, 370 S.W.2d 898 (Amarillo Tex. Civ.App.1963, writ refused n.r.e.); *New Amsterdam Casualty Company v. Ellzey*, 240 F.2d 618 (5th Cir. 1957); *U.S. Sanitary Specialties Corp. v. Globe Indemnity Co.*, 204 F.2d 774 (7th Cir. 1953). In each of these decisions the insured, whose "operations" (only) were insured, had transferred possession of the product to the customer at the customer's premises, so that his operations were "completed" or possession of the product had been completely relinquished to such customer (thus, a third-person "other") for such customer's use.

8. In the oral argument, it was stated the lumber was placed on Sears truck "f.o.b. Jasper, Texas" (i. e., at Martindale's plant). This fact is not in the stipulation before the district court or this tribunal; if we were permitted to consider it, this factual circumstance would not

In perhaps unnecessary elaboration of this conclusion, the determination of whether delivery is a part of Martindale's operations insured by the Bituminous policy involves a construction of the policy term "operations" (otherwise undefined), which is narrowed by the policy schedule to include, relevantly, "lumber yards" and "logging and lumbering." Commercial ventures of this nature contemplating marketing of the product manufactured or sold, and some sort of transfer of possession, i. e., delivery, of the product to the customer.

The delivery of the product to the customer can, of course, be accomplished in a number of ways. It could be accomplished by delivery to the buyer (or to a carrier for the buyer) at the seller's site, in which case the seller's operations might be completed at that time. Bituminous argues that such is the case under present circumstances. Under the facts properly found, however, instead the seller's obligation included delivery through an independent contractor employed by him; such delivery was no less a part of the seller Martindale's insured operations (under the present agreement between the relevant parties) than would have been Martindale's delivery through its own employees.[9]

Likewise, under the stipulated facts, the accident and Gray's injuries had not been completed at the time of the accident. This occurred as Gray unchained the lumber, preparatory to having the Louisiana eventual purchaser's employees commence unloading it. Martindale's operations (performed through its contractor's employee, Gray), might [10] have been concluded had the accident occurred after the purchaser's employees commenced unloading the truck, since Gray had under the present facts no responsibility in that regard. It is, however, stipulated that this activity of the recipient of the lumber had not commenced at the time of the accident. It also appears from the agreed facts that unchaining at least the first-to-be unloaded portion of the stacked lumber was a necessary act in furtherance of delivery and relinquishment of possession by Sears, acting on behalf of Martindale. Thus, Mr. Gray was injured while delivering the lumber.[11]

### III.

We thus determine, in accord with the district court, that the accident that injured Mr. Gray occurred toward the close of, but nevertheless during, Martindale's as yet *uncompleted* operations. The Completed Operations exclusion is therefore inapplicable. This conclusion is consonant with the rulings in the decisions relied upon by Martindale. *Gordon Yates Building Supplies, Inc. v. Fidelity & Cas. Co. of N.Y.*, 543 S.W.2d 709 (Ft.Worth Tex.Civ.App.1976, writ refused n.r.e.); *Reed Roller Bit Company v. Pacific Employers Ins. Co.*, 198 F.2d 1 (5th Cir. 1952).

---

alter the contractual agreement between Martindale and Elkins, by reason of which the delivery of the lumber was Martindale's obligation and part of its lumberyard operation.

9. The language of this policy clearly recognizes the insured's ability to carry out its operations through contractors. For example, the definition of completed operations refers to "operations to be performed by *or on behalf of* the named insured." See note 5 *supra.*

10. However, those operations might not have ended until the truck driver released the final set of chains. Apparently this would not be done with respect to the lower stacks of lumber until the upper stacks had been unloaded. We need not decide whether the insured's operations could therefore overlap with the actions of the recipient of the product that indicate a partial relinquishment of possession to that re-

cipient. Such relinquishment of possession might be pertinent to coverage or exclusion under the Products hazard.

11. At the least, the injury occurred at a time in such close temporal contiguity to delivery that, especially as the acceptance of the delivery by South Louisiana Contractors had not begun, it must be considered part of the very final portion of the operation. It is apparent from the agreed fact statement that the lumber fell immediately upon release of the chains; no unloading action precipitated its fall. It would be contrary to the well-established rule of construing insurance policies liberally in favor of the insured, now to determine that the insured's operations had terminated during the split-second while the injuring boards plunged toward the unfortunate truck driver.

The defendant further contends, however, that the accident nevertheless fell within the excluded Products hazard. Products hazards coverage protects, inter alia, against injury resulting *after* physical possession of the product has been relinquished to "others". Bituminous relies upon Martindale's concession in the stipulated facts that it had relinquished possession of the lumber to Sears, the independent contractor retained by Martindale to perform the delivery portion of Martindale's operation. Bituminous thus contends that Sears, the contractor, is an *"other"*.

One meaning of "others," uninfluenced by context, may well be that implicitly proposed by the defendant, *i. e.*, "*any person or entity other than the insured.*" However, an insurance policy is construed in its entirety so as to effectuate the intention of the parties, and in particular the courts do not interpret any provision so as to render other insuring provisions ineffective or meaningless. *Republic Nat. Life Ins. Co. v. Spillars*, 368 S.W.2d 92, 5 A.L.R.3d 957 (Tex. 1963); *First National Bank of Midland v. Protective Life Ins. Co.*, 511 F.2d 731 (5th Cir. 1975). By an attached endorsement, Martindale expressly purchased coverage of bodily injury to an independent contractor or to an employee of an independent contractor while such person was engaged in "operations described in the Schedule of Operations contained in this endorsement." That schedule describes the operations of lumberyards and of logging and lumbering.

Since any independent contractor or employee is one "other than" the named insured, we can effectuate the intent of the parties only by interpreting "others" as referring to recipients of the insured's products who are not participants in the insured's operations. The policy clearly recognizes that a person or entity may have possession of the insured's property while that person or entity performs some part of the insured's operations. See note 9 *supra*. The temporary transfer of physical possession to one standing in the place of the insured in the performance of operations does not constitute relinquishment of possession to others for purposes of invoking the Products hazard exclusion. The exclusion is therefore inapplicable to negate the coverage under Premises-Operations and the Independent Contractors coverages.

*Conclusion*

Under the stipulated facts, the injuries and accident were within the coverage of the policy issued by Bituminous to Martindale and did not arise out of a hazard excluded from its coverage. Likewise, the allegations of the suit against the insured Martindale brought by Gray, the tort claimant, did not bring this claim within any policy exclusion; the insurer Bituminous therefore breached its duty to defend Martindale against the Gray claim. We AFFIRM the judgment of the district court, based upon its factual and legal conclusions to such effect.

However, the defendant has pointed out that prejudgment interest was incorrectly assessed at 9% per annum, and that the proper rate should be 6%. Martindale concedes that, under a recent decision, this complaint is correct. We therefore reverse that portion of the district judgment only insofar as it provides for the incorrect rate of prejudgment interest and remand.

AFFIRMED ON MERITS; REVERSED AS TO PREJUDGMENT INTEREST; AND REMANDED.