CLASSIC PERFORMANCE CARS, INC. dba Performance Mustangs, Plaintiff,

v.

ACCEPTANCE INDEMNITY INSURANCE COMPANY, Defendant.

CIV.A. No. H–05–3929.

United States District Court, S.D. Texas, Houston Division.

Sept. 13, 2006.

Karen L. Normand, Attorney at Law, Houston, TX, for Plaintiff.

George T. Jackson, Burck Lapidus et al., Houston, TX, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MILLOY, United States Magistrate Judge.

On March 20, 2006, the parties consented to proceed before a United States magistrate judge, for all further proceedings, including trial and entry of a final judgment, under 28 U.S.C. § 636(c). (Docket Entry # 18). Pending before the court is a request from Classic Performance Cars, Inc. d/b/a Performance Mustangs ("Classic Performance," "Plaintiff"), for a judgment in its favor, on the claim that Acceptance Indemnity Insurance Company ("Defendant," Acceptance Indemnity") breached the contract of insurance between them. (Plaintiff's Motion

for Partial Summary Judgment ["Plaintiff's Motion"], Docket Entry # 9). In response, Acceptance Indemnity has filed its own motion for summary judgment on all of Plaintiff's claims. (Acceptance Indemnity Insurance Company's Motion for Summary Judgment and Response to the Motion for Summary Judgment of Classic Performance Cars, Inc. DBA Performance Mustang ["Defendant's Motion"], Docket Entry # 11). A series of responses and replies followed those cross motions. (Classic Performance Cars Inc.'s Response to Acceptance Indemnity Insurance Company's Motion for Summary Judgment ["Plaintiff's Response"], Docket Entry # 15; Classic Performance Cars, Inc. Supplemental Response and Reply to Acceptance Indemnity Insurance Company's Response and Motion for Summary Judgment to Classic Performance Cars, Inc. DBA Performance Mustang's on Duty to Defend ["Plaintiff's Supplemental Response and Reply"], Docket Entry # 16). After considering the pleadings, the evidence, and the applicable law, Defendant's motion for summary judgment is GRANTED, and the case is dismissed.

## BACKGROUND

This insurance dispute between Classic Performance and Acceptance Indemnity was triggered by the insurer's refusal to defend Plaintiff in two lawsuits now pending in state court. (*See* Defendant's Motion at 3–9). Although neither party makes it clear, it appears that Classic Performance is in the business of selling used cars.[1] Used car businesses typically present special risks for their owners and insurers, because of the liability issues raised by their general business activities, as well as those that arise from use of the automobiles themselves. *Garage liability coverage-Nature of coverage-What are considered "garage operations,"* 5 Law and Prac. of Ins. Coverage Litig. § 55:14

(2006). For this reason, used car dealerships often obtain insurance policies which provide what is known as "garage operations" coverage. In general, these garage operations contracts provide insurance coverage for two separate liability risks. In such contracts, the insurer agrees to indemnify the insured, not only for damage caused by use of the automobiles, but also for damage caused by any business operations which do not involve the autos. *Id.* Classic Performance purchased such a policy from Acceptance Indemnity. (Plaintiff's Motion, Ex. A: Policy No. CG00032978 ["the policy"]). Under that policy, Acceptance Indemnity was required to defend and indemnify Classic Performance for any damages resulting from its usual business operations. However, the policy expressly excluded from coverage a number of specified activities, including any conduct related to the repossession of autos that had been purchased from the car dealer. (Plaintiff's Motion at ¶ 25; Defendant's Motion at ¶ 7). It is that exclusion that forms the basis of the parties' dispute. (*See* Defendant's Motion at Ex. B ["Clough lawsuit"]; Defendant's Motion at Ex. C ["Kenny lawsuit"]). When Classic Performance was sued in two state court actions, because of injuries purportedly suffered during the repossession of a vehicle, it requested a legal defense and, if necessary, indemnity from Defendant under the policy in effect. The insurer, however, invoked the noted policy exclusion and denied those requests. To determine whether Defendant's refusal is legitimate, it is obvious that the state court claims must be examined more fully.

The first suit against Classic Performance was initiated in 2005, by Robert and Sherry Clough. The Cloughs had reportedly defaulted on their installment contract with Plaintiff, which required them to

---

**1.** *See* Performance Mustangs Home Page, http://performancemustangs.com.

make monthly payments on their automobile, until the balance was paid in full. The Cloughs claim, however, that Classic Performance authorized an extension of the final payment deadline. (Defendant's Motion, Ex. B at 2). They claim, in fact, that by agreement, the last payment on the red Lincoln Continental they purchased from Plaintiff, was to be made on February 23, 2005. They would then receive the car title free of any liens. In their lawsuit, the Cloughs allege that, on the day before this final payment was due, Classic Performance took steps to repossess the car. (*Id.*). The state court pleadings allege that Plaintiff hired an unidentified company to repossess the Lincoln, and that this company then delegated the job to two unnamed individuals. These two purportedly went to the Cloughs' home to take the car away from them. (*Id.* at 2–3). The Cloughs claim, that, while driving the Lincoln away, one of the men hit a travel-trailer which was parked in the driveway and, in the process, damaged both the car and the trailer. Before leaving, the driver supposedly sped through the yard and also damaged the Clough's property. In addition, Sherry Clough claims that the unknown driver hit her with the Lincoln as she attempted to stop him. (*Id.*). When Robert Clough was alerted to this activity, he began to chase the Lincoln in his own truck. (*Id.* at 3–4). During this chase, Robert Clough swerved into oncoming traffic and collided with another car, which was occupied by the Kenny family. (Defendant's Motion at 7). The Kennys, who filed the second suit at issue, claim that

the collision with Clough not only resulted in injuries to each of them, but that it also caused Cynthia Kenny to suffer a miscarriage. (Defendant's Motion, Ex. C at 4).

Predictably, the Cloughs sued Classic Performance in the state district court in Montgomery County, alleging violations of the Texas Business and Commerce Code, negligent and fraudulent misrepresentation, breach of contract, fraud, theft, and negligence.[2] (Defendant's Motion, Ex. B at 5–13). The Cloughs claimed, specifically, that Classic Performance "failed to use ordinary care in the manner in which [it] handled the repossession of [their] vehicle." (Defendant's Motion, Ex. B at 6). Likewise, the Kennys sued for their injuries, alleging negligence on the part of both the Cloughs and Classic Performance.[3] (*See* Defendant's Motion, Ex. C). The Kennys alleged Classic Performance's negligence stemmed from "the manner in which [it] performed the repossession and breached the peace." (Defendant's Motion, Ex. C at 4). When Plaintiff received notice of these suits, it requested Defendant to defend and indemnify it, if found liable, as the policy allegedly requires. Acceptance Indemnity rejected Classic Performance's demand, and as a result, it was added to the Clough lawsuit as a third party defendant. (*See* Third Party Petition ["Complaint"], Docket Entry # 1, at 6). Acceptance Indemnity had those allegations severed, and it then removed this insurance dispute to federal court, invoking diversity jurisdiction. (*See* Complaint at 1–4, 17–18). Acceptance Indemnity now asks this court to declare its duties under

**2.** Cause No. 05–03–02667–CV, *Robert and Sherry Clough v. Classic Performance Cars, Inc. d/b/a Performance Mustangs and John Doe,* in the 221st Judicial District Court of Montgomery County, Texas ("Clough lawsuit").

**3.** Cause No.2005–65679, *William Miles Kenny and Cynthia Kenny, Individually and as next*

*friends of William Barrett Kenny, a Minor, and William Miles Kenny, as Personal Representative of the Estate of Jake Kenny, Deceased v. Classic Performance Cars, Inc.; Classic Performance Cars, Inc. d/b/a Performance Mustangs; Performance Mustangs; and Robert Daniel Clough,* in the 127th District Court of Harris County, Texas ("Kenny lawsuit").

the policy as to the liability claims brought against Classic Performance by the state court plaintiffs.

## STANDARD OF REVIEW

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (1994). The United States Supreme Court has repeatedly characterized the Declaratory Judgment Act as an "enabling" statute only, "which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (quoting *PSC v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952)). The Court has explained, as well, that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (quoting *Wycoff*, 344 U.S. at 241, 73 S.Ct. 236). Disputes relating to insurance coverage are often resolved in an action for declaratory judgment. *Harris v. United States Fidelity & Guaranty Co.*, 569 F.2d 850, 852 (5th Cir.1978). It is well established, however, that § 2201 is merely procedural, and that it extends only to those controversies within the jurisdiction of the federal courts. *Gaar v. Quirk*, 86 F.3d 451, 453–54 (5th Cir.1996); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1176–77 (5th Cir.1984). For that reason, federal courts may not entertain declaratory judgment actions unless there is an independent basis for subject matter jurisdiction. *Lowe*, 723 F.2d at 1177. As the present case is based on diversity of citizenship, under 28 U.S.C. § 1332, the jurisdictional requirements are satisfied, and Acceptance Indemnity's request for declaratory relief is properly before this court. Acceptance Indemnity now asks the court to exercise that jurisdiction, and grant a summary judgment in its favor on all claims.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Id.* When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in it pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). If the movant does meet his burden, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075. Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir.1994). In deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075. If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson*, 477 U.S. at 249–250, 106 S.Ct. 2505.

## DISCUSSION

 In this diversity case, there is no contention that any state law, other than that of Texas, controls this insurance dispute. (*See* Plaintiff's Motion at 3; Defendant's Motion at 4). Under Texas law, it is well settled that an insurer owes a duty to defend its insured against allegations that arise from events that are covered under the policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). It is also well-settled in Texas law that the duty to defend is a broader one than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.*, 249 F.3d 389, 391 (5th Cir.2001); *Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993); *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, no pet.); *Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848 (Tex. App.—Dallas 1987, no writ). And, in the event of a coverage dispute, "an insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996); *and see Rhodes v. Chicago Ins. Co., Div. of Interstate Nat'l Corp.*, 719 F.2d 116, 119 (5th Cir.1983) (citing *Superior Ins. Co. v. Jenkins*, 358 S.W.2d 243, 244 (Tex.Civ.App.—Eastland 1962, writ ref'd n.r.e.); *Maryland Cas. Co. v. Moritz*, 138 S.W.2d 1095, 1097–98 (Tex.Civ.App.—Austin 1940, writ ref'd)); *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 173 (Tex. App.—El Paso 1996, writ denied). More importantly, the obligation to defend an insured arises if there is "potentially, a case under the complaint within the coverage of the policy." *Rhodes*, 719 F.2d at 119; *Merchants*, 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965) (quoting 50 A.L.R.2d 458, 504). But to determine whether a duty to defend exists, in a given case, the court's inquiry is limited to a review of the "four corners" of the insurance policy and the "four corners" of the underlying complaint. *Merchants*, 939 S.W.2d at 140; *Providence Wash. Ins. Co. v. A & A Coating, Inc.*, 30 S.W.3d 554, 555 (Tex.App.—Texarkana 2000, pet. denied); *Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861 (Tex.App.—Houston [1st Dist.] 1998, pet. denied). This requirement, deemed the "eight corners" or "complaint allegation" rule, governs this dispute, as well. *See Merchants*, 939 S.W.2d at 141; *Canutillo*, 99 F.3d at 701.

 Under the eight-corners rule, a determination of the insurer's duties, if any, begins with an examination of the policy at issue. *See Canutillo*, 99 F.3d at 700. Texas law is clear that the interpretation of an insurance policy is a question

of law subject to the same rules that apply to contracts in general. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991); *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983). This state's highest court has held that, in "construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau,* 876 S.W.2d at 133; *see also Balandran v. Safeco Ins. Co. of America,* 972 S.W.2d 738, 741 (Tex. 1998); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). That intent is determined, first, by examining "the language of the contract itself." *Empire Fire and Marine Ins. Co. v. Brantley Trucking, Inc.,* 220 F.3d 679, 681 (5th Cir.2000) (citing *Puckett,* 678 S.W.2d at 938). In doing so, the court must give all words in an insurance contract "their plain, ordinary, and generally accepted meaning, unless the instrument shows that the parties used them in a technical or different sense." *See Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). If the policy language is susceptible to more than one reasonable interpretation, then it is deemed ambiguous, and the court must "resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991) (citing *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 667 (Tex. 1987); *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976); *Brown v. Palatine,* 89 Tex. 590, 35 S.W. 1060, 1061 (1896)). However, a policy is not ambiguous if its terms can be given only one reasonable construction. *Hudson Energy Co.,* 811 S.W.2d at 555; *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). As the Texas Supreme Court has recognized several times:

> Not every difference in the interpretation of ... an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity.

*State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex. 1994). Further, the weight of Texas case law holds that if the policy language is clear, the court may not adopt a strained, unnatural or technical interpretation that distorts the parties' intentions. *See Entzminger v. Provident Life & Acc. Ins. Co.,* 652 S.W.2d 533, 538 (Tex.App.—[1st Dist.] 1983, no writ); *see also Snug Harbor, Ltd. v. Zurich Ins.,* 968 F.2d 538, 542 (5th Cir.1992).

 Before this court, Classic Performance contends that Acceptance Indemnity owes it a vigorous defense against the Kenny and Clough lawsuits, under the insurance policy it purchased. (Plaintiff's Motion at 10). In its own motion for summary judgment, Plaintiff posits that no policy exclusion negates this duty. (*Id.*). In support of that contention, Plaintiff insists that the contract at issue is ambiguous on that point, which leaves a fact issue to be resolved, and so, precludes a summary judgment. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). If Plaintiff is correct, and the disputed exclusion in the policy is ambiguous, then it is also correct that Defendant's motion should be denied. The merit of Plaintiff's argument then clearly depends on the language of the exclusion itself. However, "[w]hether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circum-

stances present when the contract was entered." *Id.*

Here, the contract states that "[N]o coverage is afforded under this policy for ... repossession operations." (Plaintiff's Motion at 32). Plaintiff argues that this exclusion means only that it could not, through its own employees, repossess automobiles. (Plaintiff's Motion at ¶ 34). Classic Performance contends that, because it hired a third party to repossess the Clough's Lincoln, the policy exclusion does not apply. *Id.* Plaintiff argues further that, if the insurer intended to limit coverage for any repossession conduct, the exclusion should have been written as follows: "Repossession Operations **(even if contracted to a third party)** are not covered under this policy." *Id.* (emphasis in original).

A review of the plain language of the policy exclusion shows Plaintiff's interpretation to be hopelessly strained. The language is clear on its face. There is no coverage for "repossession operations." It is unreasonable to conclude that the provision does not exclude those activities if delegated to a third party. While inserting Plaintiff's suggested language, "even if contracted to a third party," may make the insurance agreement perfect, it is unnecessary, because the exclusion is sufficiently clear as written. *See First Nat'l Bank of Midland v. Protective Life Ins. Co.,* 511 F.2d 731, 734–35 (5th Cir.1975). *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 83 (Tex.1997). The contract, as a whole, presents no ambiguity and can be interpreted as a matter of law.

Texas law is settled that, "[i]f a petition alleges facts that, *prima facie,* exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.,* 40 F.3d 79, 81 (5th Cir.1994) (quoting *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 677 (Tex.App.—Houston [14th Dist.] 1993, writ

denied)); *and see Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982). It is the insured's burden to show "that the claim against it is potentially within the policy's coverage." *Id.* at 701; *and see Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996). On the other hand, "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo,* 99 F.3d at 701 (citing Tex. Ins. Code art. 21.58(b)). More importantly, an insurer's duty to defend is determined by the language of the insurance policy and a liberal interpretation of the allegations in the pleadings. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). In reviewing the underlying pleadings, however, the court must focus on the factual allegations that show the origin of the damages, rather than on the legal theories alleged. *Id., citing Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied)("It is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct."). In this case, unless the Clough and Kenny petitions allege facts which trigger the policy's protection, Acceptance Indemnity has no duty to defend Classic Performance against the underlying lawsuits.

In its motion, Acceptance Indemnity insists that the contract excludes claims, such as those by the Cloughs and Kennys, that arise from repossession conduct. It contends that, because an express policy exclusion negates any obligation it might otherwise have to defend Classic Performance, there is no genuine issue of fact that remains for trial. (Defendant's Motion at 13–14). It is clear that the state pleadings

and the policy itself must be scrutinized to determine whether the Clough and Kenny allegations fall within the coverage agreement between Classic Performance and Acceptance Indemnity. The general policy coverage at issue is styled: "Garage Operations Other Than Covered 'Autos'," and it states the following:

(a) We will pay all sums an "insured" legally must pay as damages because of **"bodily injury"** or **"property damage"** to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a suit seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate.

(Plaintiff's Motion, Ex. A at 2)(emphasis added). As noted, however, a later policy provision excludes certain activities from coverage. That exclusion, detailed under the heading, "Combined Garage Exclusion Endorsement," lists ten activities for which coverage does not extend. (Plaintiff's Motion at 32). The section of that exclusion that is relevant here, reads as follows:

It is hereby understood and agreed, no coverage is afforded under this policy, for . . . 6. Repossession operations

(*Id.*). Whether this exclusion was triggered, in this instance, is measured by the allegations made in the Clough and Kenny lawsuits.

The Kenny petition alleges clearly and succinctly that Classic Performance was negligent in "the manner in which [it] performed the repossession and breached the peace." (*See* Defendant's Motion, Ex. C at 4). The Clough petition, which also alleges

negligence, provides more detail on Plaintiff's allegedly negligent conduct. In that pleading, the Cloughs claim that Classic Performance was negligent because it "failed to use ordinary care in the manner in which [it] handled the repossession of [the Cloughs'] vehicle." (Defendant's Motion, Ex. B at 6); (Plaintiff's Motion at ¶ 29). The petition then lists the specific acts, recited below, which exemplify Classic Performance's unlawful conduct:

1. Causing Plaintiff, Sherry Clough to be run over by the vehicle and to suffer severe bodily injury;

2. Causing damages to the vehicle during removal from the premises;

3. Causing damages to adjacent personal property during removal of the vehicle from the premises;

4. Causing damages to the premises during removal of the vehicle;

5. Causing Defendants' truck to strike Plaintiffs' truck;

6. Causing Plaintiffs' truck to swerve into oncoming traffic, causing the head-on collision with the Isuzu Trooper;

7. Causing severe damage to Plaintiffs' red Lincoln while the vehicle was in the possession of Defendants;

8. Causing Plaintiffs to have to expend significant resources to regain possession of the vehicle, have the vehicle towed, and have the vehicle repaired;

9. Causing severe and pervasive mental distress and mental anguish resulting from all of the above referenced acts and omissions;

Defendants had a duty, according to the laws of this state, to perform the repossession without a breach of the peace. Further, Defendants had a duty to use ordinary care in driving on the roadways and to not cause damage to Plaintiffs' vehicles. Defendants wholly

failed to use ordinary care and have breached their legal duties to Plaintiffs. (*Id.* at 6–7). The Cloughs also make claims against Classic Performance for violations of the Texas Business and Commerce Code, negligent and fraudulent misrepresentation, breach of contract, fraud, and theft. (Defendant's Motion, Ex. B at 5–13).

On review of the state court pleadings, it is quite clear that, regardless of the particular legal theory articulated by the claimants, all of these injuries relate to the attempt to repossess the Clough's Lincoln Continental. For instance, the Cloughs' claim that Classic Performance violated the Texas Business and Commerce Code is based on the argument that a proper repossession of collateral may not result in a breach of the peace. (*Id.* at 5). And their claims for breach of contract, fraud, negligent and fraudulent misrepresentation, and violations of the Deceptive Trade Practices Act, all implicate Classic Performance's allegedly false statement that they could postpone the final car payment to avoid repossession. (*Id.* at 7–12). The final claim, under the Texas Theft Liability Act, alleges that Classic Performance appropriated the car unlawfully from the Cloughs' private property. (*Id.* at 13).

 Despite the express exclusion, Plaintiff contends that, under Texas law, the term "accident," as used in the policy is meant to include any negligently inflicted injury. *Glover v. Nat'l Ins. Underwriters,* 545 S.W.2d 755 (Tex.1977), *cited in Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 276 (Tex.App.-Houston [1st Dist.] 2001, no pet.). It argues that, because the Cloughs and Kennys claim that their injuries were caused negligently, the policy coverage is triggered. This argument, however, is without merit. In employing the "eight corners" rule to the underlying pleadings, scrutiny falls on the factual allegations that detail the origin of

the damages, and not on the legal theories articulated. *Merchants,* 939 S.W.2d at 141; *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Although it is true that, here, negligence is one theory upon which the Cloughs and Kennys rely, all of their state court claims undeniably arise from the repossession of the Lincoln Continental. More importantly, because the contract excludes any repossession operations, conduct which purportedly arises from such actions does not trigger any duty to defend by Acceptance Indemnity. On this record, the four corners of the state court pleadings, and the four corners of the insurance contract, make it clear that none of the claims which stem from the attempt to repossess the Cloughs' car, state a potential cause of action that initiates the insurer's duty to defend.

 The next logical inquiry is whether Acceptance Indemnity has any duty to indemnify Classic Performance if the state court claimants succeed on their allegations. On this subject, Texas courts agree, that:

> Unlike the duty to defend, which arises when a petition seeking damages alleges facts that *potentially* support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts.

*Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 275 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *see also Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997). Clearly then, that duty arises, if at all, only after the insured has been found legally responsible for damages, either through a judgment or settlement. *Hartrick,* 62 S.W.3d at 275. It follows then, that even if a duty to defend exists, findings on a duty to indemnify may be premature. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,* 146 S.W.3d 833, 846

(Tex.App.-Dallas 2004, pet filed). But if, as in this case, the insurer has no duty to defend, "the duty to indemnify is justiciable... [if] the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997). In fact, in *Farmers Tex. County Mut. Ins. Co. v. Griffin,* the Texas Supreme Court emphasized that principle in a case with facts similar to those before this court.

In *Griffin,* the victim of a drive-by shooting sued the car's owner in a negligence action. *Id.* at 82. The owner sought a defense and indemnity from his auto insurance company. When the insurer refused that demand, the court ruled in its favor, finding that no duty to defend existed. In doing so, it reasoned that, even though the victim hoped to recover on a negligence claim, the facts alleged showed that his injuries did not stem from a "car accident," but from intentional conduct, an assault. Under the policy in dispute, "accidents" were covered, but intentional conduct was not. *Id.* at 83. The court then turned to the question of the duty to indemnify. In addressing whether that duty arose from the facts, the court found that "no facts could be developed in the underlying tort suit that would transform a drive-by shooting into an 'auto accident.'" On that basis, the court ruled that the insurer had no duty to indemnify the driver. *Id.* at 84; *see also Collier v. Allstate Mut. Ins. Co.,* 64 S.W.3d 54 (Tex. App.-Fort Worth 2001, no pet.). Likewise, no facts can "be developed" here that "would transform" the underlying cases from "repossession operations" to an "accident" under the policy. For that reason, Acceptance Indemnity has no duty to defend or indemnify Plaintiff on these state court negligence claims.

*Breach of the Duty of Good Faith and Fair Dealing*

 Classic Performance also claims that Acceptance Indemnity breached its duty to deal with it fairly in responding to its demand for coverage. On that point, Plaintiff alleges the following:

> [Acceptance Indemnity] had a duty to deal fairly and in good faith with [Classic Performance]. By removing a material and necessary coverage without informing [Classic Performance] is a violation of the company's duty of good faith and fair dealing [sic].

(Complaint at ¶ 5). Although this claim is not perfectly clear, perhaps Plaintiff is complaining that the policy originally supplied coverage for repossession operations, but was later changed to exclude that coverage. Or perhaps Plaintiff claims that it was not aware that no such coverage existed under the policy, and that no specific notification of that fact was ever given. Presuming that one of those premises is the basis for Plaintiff's claim, Classic Performance would have to raise some issue of fact to defeat the insurer's motion for summary judgment. Texas law is well-settled that a party claiming that a contract has been modified bears the burden of proof on that claim. *Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986); *see also Price Pfister, Inc. v. Moore & Kimmey, Inc.,* 48 S.W.3d 341 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In this regard, Plaintiff has not submitted any evidence to prove, or even to suggest, that the contract was modified without negotiation or notice. In fact, the contract submitted as summary judgment evidence sets out an exclusion for repossession conduct. (Plaintiff's Motion, Ex. A at 32). Because Plaintiff bears the burden to raise a fact issue on this vague allegation, and because it has not done so here, that claim fails.

Further, while it is true that, under Texas law, an insurer has a duty to deal fairly and, in good faith, with its insured in responding to claims, not every complaint about an insurer's conduct is actionable. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987); *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456 (5th Cir.1997). That duty is not breached merely because a claim is denied. Only if a decision to deny a claim is an unreasonable one, will an insurer be liable for a breach of its duty to the policyholder. *Arnold*, 725 S.W.2d at 167. Here, the contract expressly excludes repossession operations, and Acceptance Indemnity had a reasonable basis on which to deny Classic Performance's demands. For that reason, as a matter of law, Acceptance Indemnity did not breach the duty of good faith and fair dealing that it owed to Classic Performance.

*Detrimental Reliance, Mistake and Negligent Misrepresentation, and Texas Ins. Code Violations*

Classic Performance has also made claims for detrimental reliance, mistake and negligent misrepresentation, as well as, for a violation of the Texas Insurance Code, § 21.21.[4] (Plaintiff's Motion at ¶ 1). However, other than the duty to deal fairly and in good faith, an insurer owes no duties to the insured beyond those set out in the contract itself. *Higginbotham*, 103 F.3d at 460; *see also United Servs. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 783

(Tex.App.-San Antonio 1991, writ denied). Stated simply, liability on any of those allegations can arise only if the claims are "independent of the fact that a contract exists between the parties." *Pennington*, 810 S.W.2d at 783; *see also Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (1991); *Higginbotham*, 103 F.3d at 460. Each one of Classic Performance's remaining tort claims must be reviewed under that principle. In its claim for "detrimental reliance," Classic Performance alleges that it "obtained insurance from [Defendant] specifically because the insurance included coverage for repossession … [it] relied on this coverage[,] and [Defendant] eliminated the coverage without informing [it]." (Complaint at ¶ 3). In alleging "mistake" and negligent misrepresentation, Plaintiff claims that Acceptance Indemnity "unintentionally removed the coverage, but failed to inform [Plaintiff] that the coverage was no longer included in the policy." (*Id.* at ¶ 4). Clearly, both of these claims are based on the insurance contract itself and are not "independent of the fact that a contract existed between the parties."

Finally, Classic Performance claims that Acceptance Indemnity violated section 21.21 of the Insurance Code. (Complaint at ¶ 7). Plaintiff states, specifically, that,

> Texas Insurance Code § 21.21(11) states that a company violates this code if they fail to state a material fact and failing [sic] to disclose any matter required by

---

4. In its motion for partial summary judgment, Plaintiff also complained that Defendant violated Texas Insurance Code, § 21.55, entitled "Prompt Payment of Claims." (Plaintiff's Motion at 12).

The provision provides that payment delays after an insurer has received all statements, and forms reasonably requested and required for more that [sic] 60 days, the insurer shall pay, in addition to all other

payments due, 18% per annum of the amount of such claim as damages.

(*Id.*). However, Classic Performance never made this allegation in its complaint, and for that reason alone Defendant faces no liability on it. Even if it were otherwise properly before the court, Acceptance Indemnity acted reasonably in denying the claim, and so there was no duty to make a "prompt payment."

law. In this case, [Acceptance Indemnity] failed to inform defendant about the termination of the coverage which defendant relied upon.

(*Id.*). Texas law interpreting that provision of the Insurance Code, however, makes it clear that such claims require the same predicate for recovery as those for bad faith causes of action. *Higginbotham,* 103 F.3d at 460; *Vail v. Tex. Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 136 (Tex. 1988); *Saunders v. Commonwealth Lloyd's Ins. Co.,* 928 S.W.2d 322, 324 (Tex. App.-San Antonio 1996, no writ).

> Under Texas law, an insurer who can prove that it possessed a reasonable basis for denying or delaying payment of a claim ... enjoys immunity from statutory bad faith under the Texas Deceptive Trade Practices Act and the Texas Insurance Code.

*Saunders,* 928 S.W.2d at 324. It follows then, that given the earlier finding that Defendant did not owe Classic Performance a duty to defend and indemnify it in the state court actions, Plaintiff's claims must fail. Acceptance Indemnity had a reasonable basis on which to deny Plaintiff's demands, as the policy excluded the complained of conduct from coverage. Because Classic Performance has not shown that any genuine issue of material fact remains for trial, on any of its claims, summary judgment is appropriate. It is ORDERED that Defendant's motion for summary judgment is GRANTED, and that Plaintiff's corresponding motion is denied.

## CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's motion for summary judgment on all Plaintiff's claims is GRANTED. Therefore, this case is DISMISSED, with prejudice.

This is a FINAL JUDGMENT.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.