**Reversed and Remanded; Opinion Filed May 12, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-12-00596-CV
_____

**ARCH INSURANCE COMPANY, Appellant**
**V.**
**UNITED STATES YOUTH SOCCER ASSOCIATION, INC., Appellee**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-03007-2010**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Appellant Arch Insurance Company ("Arch") appeals from the trial court's grant of summary judgment in favor of appellee United States Youth Soccer Association, Inc. ("USYSA"). In two issues, Arch alleges: (1) the summary judgment evidence proves that an exclusion within its liability insurance contract excludes coverage and a duty to defend USYSA in a grievance filed with the United States Soccer Federation (USSF) and (2) the summary judgment evidence fails to establish as a matter of law that all of the attorneys' fees awarded by the trial court were reasonable and necessary and incurred in the defense of USYSA in the USSF grievance. For the reasons expressed in this opinion, we reverse and remand to the trial court for further proceedings.

**Background**

USYSA is a nonprofit corporation that organizes and hosts a variety of youth soccer events for its organization members and its player members. USYSA is a member of the USSF, which is recognized by the United States Olympic Committee ("USOC") as the national governing board for soccer in the United States. The Amateur Sports Act, 36 U.S.C. §§220501–220529, governs the USOC and its recognition of national governing bodies. An affidavit from the Executive Director of the USYSA states the USYSA is a member of the USSF pursuant to provisions implemented by the USSF as required by the Amateur Sports Act.

*Underlying Arbitration*

On August 17, 2009, the National Association of Competitive Soccer Clubs d/b/a US Club Soccer ("US Club Soccer") and three members of US Club Soccer—Minnesota Thunder Academy, Coast Futbol Alliance, Inc., and Vitesse Soccer, Inc. (collectively the "grievance complainants")—filed a Grievance Complaint with the USSF against USYSA and five other USSF Organization Members—the Minnesota Youth Soccer Association, the North Dakota Youth Soccer Association, the South Carolina Youth Soccer Association, the Tennessee State Soccer Association, and the Wisconsin Youth Soccer Association (the "grievance respondents").

In the Grievance Complaint, the grievance complainants alleged that the grievance respondents, including the USYSA, failed to comply with their respective membership requirements as provided in the USSF bylaws. The grievance complainants alleged that USYSA breached these bylaws by instituting a number of policies, rules, procedures and practices that were designed to make it more difficult for children, coaches, teams and clubs to participate in the grievance respondents' events, and to restrict the grievance complainants' members from participating in USYSA soccer programs or USYSA member programs.

In their brief before us, the grievance complainants point out that the Grievance Complaint also contained allegations of discrimination in violation of the Amateur Sports Act. Specifically, the grievance complainants alleged "USYSA and some of its state association members have repeatedly discriminated against [the American Youth Soccer Organization] and its players and teams in violation of the [Amateur] Sports Act and the USSF Bylaws, Policies, rules and requirements." In particular, the grievance complainants stated the AYSO had to file several grievances to procure and maintain interplay rights in the USSF's bylaws.

In the Grievance Complaint, the grievance complainants asserted the grievance respondents failed to comply with the following USSF membership requirements as follows:

a. Violated USSF Bylaw 212(1)(1) by failing to comply with the USSF bylaws, policies and requirements;

b. Violated USSF Bylaw 213(1)(a)(3) by failing to abide by the USSF's binding rules, polices and bylaws, including Bylaw 603 governing interplay, which rules, polices and bylaws take precedence over the respective organizational and governing documents of the [grievance] respondents;

c. Violated USSF Bylaw 241(2) by engaging in conduct that is adverse to the best interests of soccer and the USSF;

d. Violated USSF Bylaw 603 by discriminating against the participation of players, teams, coaches and/or clubs based upon those player, coach, team and/or club's membership in or affiliation with another organization–including both taking negative actions against players, teams, coaches, and/or clubs affiliated with certain USSF Organization Members and giving preferential treatment to the players, teams, coaches and/or clubs affiliated with certain other USSF Organization Members;

e. Violated USSF Policy 601-7(1) by interfering with the opportunity of a player, coach or team to compete in a competition, including a game, scrimmage, tournament or league and denying permission for players, coaches and teams to travel to participate in competitions, including tournaments;

f. Violated USSF Policy 601-7(2) by implementing a bylaw, rule or policy that prohibits their respective members from participating in Unrestricted Tournaments;

g. Violated the February 16, 2003 resolution of the USSF Board of Directors that prohibits any USSF Organization Member from using insurance to prohibit

–3–

players or teams from participating in competitions sponsored by any USSF Organization member or member thereof.

The grievance complainants requested that, "as a result of the [grievance] respondents' failure to comply with their respective membership requirements," that grievance respondents "immediately come into compliance with their membership obligations in the USSF and to cease and desist from any further discrimination against the [grievance] complainants" as follows:

a. Require that each [grievance] respondent fully comply with all of the USSF's bylaws, policies, rules and resolutions regarding interplay and immediately cease and desist all efforts to prevent, interfere or otherwise discourage interplay amongst USSF members;

b. Require that each [grievance] respondent immediately cease and desist all discriminatory practices and actions (both negative and preferential) with respect to USSF Organization Members and take all actions necessary to ensure that [grievance] respondents and their respective members treat all USSF Organization Members and their members equally;

c. Require that each [grievance] respondent fully comply, and take all actions necessary to ensure that each Respondent's members fully comply, with all of the USSF's bylaws, policies, rules and resolutions regarding the participation in tournaments, including USSF Policy 601-7, and allow the respective members of the [grievance] respondents (including members of members) to participate in Unrestricted Tournaments (sanctioned by the USSF or any USSF Organization Member) as members of such [grievance] respondent with full membership rights and benefits, including all insurance coverage provided by such [grievance] respondent to its members when competing in [grievance] respondent's own programs or the programs of other members of such [grievance] respondent;

d. Require that each [grievance] respondent immediately cease and desist all attempts to impede, restrict or prohibit their members from engaging in interplay with members of other USSF Organization Members by attempting to withhold or restrict membership benefits, including use of player cards, rosters and all insurance coverage such members receive when participating within the [grievance] respondents' respective programs or the programs of other members of the respective [grievance] respondents;

e. Require that each [grievance] respondent immediately cease and desist from requiring their respective members purchase additional insurance to (i) participate in programs sanctioned by other USSF Organization Members or (ii) host tournaments in which programs affiliated with other USSF Organization Members are eligible to participate (Unrestricted Tournaments);

f. Require that each [grievance] respondent immediately cease and desist from requiring that members of AYSO, US Club Soccer and other USSF Organization Members purchase additional insurance through the [grievance] respondents in order to participate in Unrestricted Tournaments;

g. Require that each [grievance] respondent immediately cease and desist from assessing interplay fees in excess of the $25 per team fee permitted under USSF Bylaw 603;

h. Require that respondent USYSA take all actions necessary to ensure that all of its member state associations, and all of their respective members, comply with these same conditions and requirements of the Award and not discriminate against AYSO, US CIub Soccer, any member of AYSO or US Club Soccer or any member of any other USSF Organization Member; and,

i. Provide such other and further relief as the Hearing Examiner believes is just and equitable under the circumstances.

### Arch Policy

Arch issued a claims made policy to USYSA for claims first made and reported during the September 1, 2008 to September 1, 2009 policy period (the "Policy"). Section IV.2(a) of the Policy contains the following exclusion with regard to Insuring Agreement C (the "Exclusion"):

The **Insurer** shall not be liable under COVERAGE C to make any payment for **Loss** as a result of a **Claim** made against an **Organization** for any actual or alleged obligation under or breach of any oral or written contract or agreement, including any liability of others assumed by the **Organization** under any such contract or agreement; provided, however, this exclusion shall not apply (i) to an actual or alleged breach of an implied contract in an **Employment Claim**, or (ii) to the extent the **Organization** would have been liable for such **Loss** in the absence of such contract or agreement.

### Coverage Lawsuit

USYSA filed suit against Arch on July 10, 2010, alleging breach of contract based on Arch's denial of a defense to USYSA under the Policy for the Grievance Complaint. USYSA later filed a motion for summary judgment, arguing the Grievance Complaint was a covered claim under the Policy and that the Exclusion did not prevent coverage. Therefore, USYSA argued it was entitled to the $365,620.24 in attorneys' fees and expenses it had incurred in defending the grievance respondents.

Arch responded that the Exclusion acted as a bar to coverage of the Grievance Complaint because it solely arose out of USYSA's contractual obligations under the USSF bylaws and policies. Arch further argued that, even if the Exclusion did not exclude the Grievance Complaint from coverage, the Policy would only provide coverage for the reasonable and necessary defense costs (1) for defending its "Insureds" under the Policy and (2) for fees and expenses comporting with the Policy's definition of "Defense Costs." Arch later filed its motion for summary judgment, including the same arguments and evidence propounded in its response to the USYSA's motion for summary judgment.

With two motions for summary judgment pending before it, the trial court granted USYSA's motion for summary judgment on February 6, 2012. However, Arch's motion for summary judgment was filed on February 3, 2012, only three days prior to the hearing on USYSA's motion. Under rule 166(a)(c), a motion for summary judgment must be filed and served at least twenty-one days prior to the time specific for the hearing. TEX. R. CIV. P. 166(a)(c). Based upon the timing of the filing of Arch's motion for summary judgment, we conclude the trial court did not consider Arch's motion for summary judgment when making its ruling on USYSA's motion. Following the grant of USYSA's motion for summary judgment, Arch filed a motion for new trial, which was denied by written order on April 20, 2012.

## Analysis

### *Standard of Review*

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant.

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Learners Online, Inc. v. Dallas Indep. Sch. Dist.*, 333 S.W.3d 636, 641 (Tex. App.–Dallas 2009, no pet.).

### Duty to Defend

An insurer's duty to defend arises when a third party sues the insured on allegations that potentially state a cause of action within the terms of the policy, without regard to the truth or falsity of the allegations. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *Gehan Homes, Ltd. v. Emp'rs. Mut. Cas. Co.*, 146 S.W.3d 833, 838 (Tex. App.–Dallas 2004, pet. denied). The duty to defend is determined under the "eight corners rule," that is, by examining the allegations of the underlying pleadings and the language of the insurance policy. *Nokia*, 268 S.W.3d at 491; *Gehan Homes*, 146 S.W.3d at 838. We consider the allegations in light of the policy provisions, giving the allegations in the petition a liberal interpretation in favor of the insured and resolving all doubts in favor of the insured. *Nokia*, 268 S.W.3d at 491; *Gehan Homes*, 146 S.W.3d at 838. If the pleadings do not allege facts within the scope of the policy's coverage, an insurer does not have a duty to defend. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). We will not read facts into a pleading. *Nat'l. Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage. *Id.*

Arch contends the four corners of the Policy excluded any defense or coverage for the grievance based upon the four corners of the Grievance Complaint. More specifically, in its first

issue, Arch argues the summary judgment evidence proves that an exclusion within its liability insurance contract excludes coverage and a duty to defend USYSA against the Grievance Complaint.

If the Grievance Complaint alleges only facts excluded by the Policy's contract exclusion, Arch has no duty to defend. *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.−2001, pet. denied). Arch asserts "[t]he facts alleged in the Grievance Complaint only seek to hold the USYSA liable for alleged violations of their contractual obligations, namely the interplay rights USYSA bound itself to in the USSF bylaws, policies, and rules." Texas courts have recognized that association bylaws may constitute a contract between the parties. *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 832 (Tex. App.−Texarkana 2011, no pet.) (citing *Lundine v. McKinney*, 183 S.W.2d 265, 273 (Tex. Civ. App.−Eastland 1944, no writ); *see also Wiese v. Heathlake Comm. Ass'n, Inc.*, 384 S.W.3d 395, 400 (Tex. App.−Houston [14th Dist.] 2012, no pet.); *In re Aguilar*, 344 S.W.3d 41, 49 (Tex. App.−El Paso 2011, no pet.) (stating courts should interpret corporate bylaws using the general rules of contract construction). Thus, Arch contends the facts alleged in the Grievance Complaint fall within the Exclusion, which excludes coverage for any actual or alleged obligation under or breach of any oral or written contract or agreement. We agree with Arch.

USYSA argues the Grievance Complaint is not excluded because it asserts facts other than a breach of the bylaws. Specifically, USYSA contends it also alleged a claim for discrimination, which would not fall within the terms of the Exclusion. In making our determination of whether the discrimination claim falls within the Policy's coverage, we must focus on the factual allegations showing the origin of the damages rather than on the legal theories alleged. *Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 497 (Tex. App.−Houston [14th Dist.] 2005, no pet.). Viewed in the context of the entire Grievance Complaint, the bare

−8−

allegation of "discrimination" is not controlling here. *See id*. at 501. Rather, the allegation of discrimination is simply another way of alleging the grievance respondents breached the applicable bylaws.

For example, the Grievance Complaint states: "Notably, no such restrictions exist for play between state associations that are members of USYSA even though the state associations are all separately incorporated entities and each direct members of US Soccer and thus required under US Soccer's bylaws, policies, rules and regulations to treat all other US Soccer Organization Members the same." Further, the Grievance Complaint alleges the grievance respondents' "discriminatory and wrongful conduct *directly violates their membership obligations* in US Soccer." (emphasis added). The grievance complainants then go on to specifically point out the grievance respondents violated seven USSF bylaws and polices, which form the basis for the Grievance Complaint. The Grievance Complaint provides that "[d]espite this lack of any material change to the soccer-playing world−and *despite the US Soccer bylaws, polices, rules and regulations, which prohibit discrimination* against other US Soccer members−[the grievance respondents] have dramatically altered how they treat the NSC events." (emphasis added). The grievance respondents are alleged to have engaged "in these *discriminatory and harmful acts that are contrary to their membership requirements* in US Soccer and the best interests of the sport of soccer. . . ." (emphasis added). The Grievance Complaint states the actions of the grievance respondents "clearly violated the bylaws, policies, rules and regulations of US soccer. . . ." In addition, in the request for relief section of the Grievance Complaint, the grievance complainants seek relief "as a result of [the grievance] respondents' *failure to comply with their respective membership requirements. . .* and to immediately come into *compliance with their membership obligations* in the USSF and to cease

and desist from any further discrimination against the [grievance] complainants. . . ." (emphasis added).

Having reviewed the factual allegations that show the origin of the relief sought, rather than the legal theories alleged, we conclude the factual allegations in the Grievance Complaint, including those for discrimination, arise from the grievance respondents' alleged breach of the USSF bylaws, polices, rules and regulations.[1] *See Huffhines*, 167 S.W.3d at 497. These allegations fall squarely within the Exclusion. Therefore, USYSA failed to establish as a matter of law that Arch owed a duty to defend. *See Garcia*, 876 S.W.2d at 848.

In its motion for summary judgment, however, USYSA argued that even if the Grievance Complaint's allegations were for breach of contract, the allegations fell within an exception to the Exclusion. Specifically, USYSA argued the application of the portion of the Policy which states: "this exclusion shall not apply. . . to the extent such Organization would have been liable for such Loss in the absence of such contract or agreement." USYSA argued the exception applies here, because "USYSA would have been liable for the 'Loss' (the defense costs) even in the absence of 'such alleged contract or agreement' because liability was alleged for 'discrimination' under the Amateur Sports Act and the legal fees would have been necessary to defend the Claim in any event."

---

[1] Although it is outside the "eight corners" and we did not consider it in our analysis, we note that in the Award of the Arbitrator issued February 2, 2010, the Hearing Examiner stated he would not read beyond the unambiguous terms of the USSF bylaws and policies and also recognized the alleged discrimination was directly related to a violation of the bylaws as follows:

> The USSF is governed by bylaws, policies and resolutions adopted by the USSF Board of Directors and National Council. As an express condition to membership in the Federation, all members are required to comply with all such bylaws, policies and resolutions. Of particular significance for the purposes of this dispute are the USSF bylaws and policies designed to promote interplay, i.e., open competition between and among players and teams of different USSF members. By their Grievance, Complainants allege that Respondents have engaged in discriminatory conduct which violates the USSF bylaws, policies, and resolutions related to interplay.
> …
> Accordingly, any award in favor of Complainants must be based upon a finding, after considering the evidence, that Respondents violated a specific USSF bylaw, policy, or resolution.

As we have already noted, however, we must focus on the factual allegations showing the origin of the damages rather than on the legal theories alleged. *Huffhines*, 167 S.W.3d at 497. Our review of the Grievance Complaint demonstrates that, regardless of the particular legal theory articulated by the grievance complainants, all of the facts relate to the alleged breach of the USSF bylaws, polices, rules and regulations. *See Classic Performance Cars, Inc. v. Acceptance Indem. Ins. Co.*, 464 F. Supp.2d 652, 663 (S.D. Tex. 2006). On this record, USYSA failed to establish as a matter of law that the Grievance Complaint fell within an exception to the Exclusion. *See id.*; *Huffhines*, 167 S.W.3d at 501.

We, therefore, affirm Arch's first issue.

### Conclusion

Because we resolve Arch's first issue in its favor, we need not reach its second issue. For the reasons stated in this opinion, we conclude the trial court erred in granting summary judgment in favor of USYSA. *See* TEX. R. CIV. P. 166a(c). We reverse the judgment of the trial court and remand to the trial court for further proceedings.

120596F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–11–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ARCH INSURANCE COMPANY,
Appellant

No. 05-12-00596-CV     V.

UNITED STATES YOUTH SOCCER
ASSOCIATION, INC., Appellee

On Appeal from the 417th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 417-03007-2010.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **REMANDED** for further proceedings.

It is **ORDERED** that appellant ARCH INSURANCE COMPANY recover its costs of this appeal from appellee UNITED STATES YOUTH SOCCER ASSOCIATION, INC.

Judgment entered May 12, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE